UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
WILLIAM M. SHOFFLER,               :
                                    :
        Plaintiff,                  :    Civ. No. 17-4859 (NLH)(JS)
                                    :
    v.                              :    OPINION
                                    :
THE CITY OF WILDWOOD NEW           :
JERSEY, CITY OF WILDWOOD JOHN/     :
JANE DOE DECISION MAKERS 1-10,     :
CHRISTOPHER CHOBERT, JAMES         :
STEVENS, JOHN/JANE DOE CITY OF     :
WILDWOOD POLICE OFFICERS 1-10,     :
THE CITY OF WILDWOOD POLICE        :
DEPARTMENT, CAPE MAY COUNTY        :
NEW JERSEY, CAPE MAY COUNTY        :
CORRECTIONAL FACILITY, CAPE        :
MAY COUNTY JOHN/JANE DOE           :
DECISION MAKERS 1-10, CAPE MAY     :
COUNTY OFFICE OF THE SHERIFF,      :
SHERIFF GARY G. SCHAFFER,          :
JOHN/JANE DOE CAPE MAY COUNTY      :
CORRECTIONAL FACILITY              :
EMPLOYEES, AGENTS, and/or          :
SERVANTS 1-10, and JOHN/JANE       :
DOE SHERIFF OFFICERS 1-10,         :
                                    :
        Defendants.                 :
_____:

APPEARANCES:

Richard F. Klineburger, III, Esq.
Klingburger & Nussey
38 North Haddon Ave.
Haddonfield, NJ 08033

        Counsel for Plaintiff

Richard L. Goldstein, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin, P.A.
1500 Midatlantic Drive
Mount Laurel, NJ 08054

        Counsel for the Cape May Defendants

Vanessa Elaine James, Esq.
A. Michael Barker, Esq.
Barker, Gelfand & James
210 New Road
Linwood, NJ 08221

    Counsel for the Wildwood Defendants


<u>HILLMAN</u>, District Judge

    This case concerns an arrest and subsequent detention that Plaintiff William M. Shoffler experienced after he repeatedly swam naked in the Wildwood Bay in front of the Wharf Restaurant, in Wildwood, New Jersey. He was subsequently processed at the Wildwood Police Station and then transported to the Cape May County Correctional Facility in Cape May Court House, New Jersey until he was bailed out the next day.

    The Complaint asserts various federal and state law claims related to his arrest and his treatment during his hours long detention. ECF No. 1. Plaintiff has asserted these claims against the City of Wildwood, the Wildwood Police Department, Wildwood Police Officers Chobert and Stevens, Cape May County, Cape May County Correctional Facility, the Cape May County Sheriff's Office, Cape May County Sheriff Gary G. Schaffer, and various John and Jane Doe defendants from these entities. <u>Id.</u> Defendants Cape May County Correctional Facility and the Cape May Office of the Sheriff were previously dismissed pursuant to

2

a motion to dismiss based on a lack of liability pursuant to
<u>Monell</u>.  ECF Nos. 24 (opinion), 25 (order).

At issue are Defendants' Motions for Summary Judgment,
which are ripe for adjudication.  <u>See</u> ECF Nos. 37 (Cape May
Motion), 38 (Wildwood Motion).  The Court has subject-matter
jurisdiction over this case pursuant to 28 U.S.C. § 1331, as
this case concerns a federal question.  For the reasons that
follow, the Court will grant the Motion and also <u>sua</u> <u>sponte</u>
dismiss the unidentified John/Jane Doe defendants pursuant to
Federal Rule of Civil Procedure 21.

I.   <u>Factual Background</u>

On or about June 30, 2017, Plaintiff filed his Complaint.
ECF No. 37-2 at 1.  Plaintiff named as Defendants Cape May
County, Cape May County Correctional Facility, Cape May County
Office of the Sheriff, and Sheriff Gary G. Schaffer as
Defendants.  <u>Id.</u> at 2.  Plaintiff also named various John/Jane
Does as it pertains to Cape May County Defendants.  <u>Id.</u>  Cape
May County Correctional Facility and Cape May County Office of
the Sheriff are departments within Cape May County and are not
separate legal entities that can sue or be sued.  <u>Id.</u>  These
entities were dismissed as a result of a partial motion to
dismiss.  <u>See</u> ECF Nos. 24, 25.

Plaintiff also named as defendants The City of Wildwood,
the Wildwood Police Department, and Wildwood Officers Chobert

and Stevens, as well as various John/Jane Doe defendants.  See
ECF No. 1.  Plaintiff has never filed an amended complaint and
therefore there are no additional individual defendants.

Plaintiff's residence during the times relevant to the
Complaint was located at 539 West Burk Avenue.  ECF No. 38-1 at
2.  During all times relevant herein, Plaintiff also owned a
property located at 704-06 West Burk Avenue.  Id.  The property
located at 704-06 West Burk Avenue is a waterfront property; it
is located on the Wildwood Bay.  Id.

The property consists of a small fenced in area between two
parking lots with a shed located within the fenced in area; it
is not a residential property.  Id.  The shed on the property,
which according to Plaintiff is approximately 12 feet by 14
feet, is used for a kayak rental business.  Id.

The Wharf Restaurant is located adjacent to Plaintiff's
property at 708 West Burk Avenue and is also waterfront.  Id. at
3.  According to Plaintiff, in the evening of June 30, 2015,
after doing some work around his 704-06 West Burk Avenue
property with non-parties Gary Meyer and Plaintiff's girlfriend
Michelle Walsh, Plaintiff decided to take a swim in the bay.
Id.  According to Plaintiff, he "probably had a couple beers
through the day" of June 30, 2015.  Id.  Ms. Walsh recalls
seeing Plaintiff consume two beers on June 30, 2015.  Id.

According to Plaintiff, he was swimming in the bay when the shorts he was wearing "came off." Id. Plaintiff describes the shorts "like a corduroy short, not a bathing suit." Id. Plaintiff was then observed swimming naked in Wildwood Bay by the Wharf Restaurant's manager, Ron Lebenski. Manager Lebenski called the Wildwood Police Department and reported that Plaintiff was swimming naked and that this was disturbing the Wharf's patrons. Id. at 4.

According to Plaintiff, he heard someone from the Wharf Restaurant yell at him as he was coming out of the water naked, but Plaintiff does not recall what was said. Id. Ms. Walsh recalls seeing Plaintiff come out of the water without his shorts on. Id.

Wildwood Police Officers Christopher Chobert and James Stevens responded to Manager Lebenski's call at the Wharf Restaurant at approximately 7:44 p.m. on June 30, 2015. Id. Upon arrival at the Wharf Restaurant, Officer Chobert spoke with the caller. Id. at 5. Manager Lebenski informed Officer Chobert that he had observed Plaintiff swimming naked in the water alongside the Wharf. Id. Manager Lebenski informed Officer Chobert that Plaintiff, who was known to Manager Lebenski, owned the property adjacent to the restaurant. Id. Manager Lebenski stated that Plaintiff was in the water completely naked and that this caused a number of the

restaurant's patrons to complain and become alarmed.  Id.  There are photographs and a video showing Plaintiff naked and walking near the water.  Id.

After speaking with Manager Lebenski, Officer Chobert made contact with Plaintiff.  Id.  He approached Plaintiff's property and observed Plaintiff standing naked inside a shed on the property.  Id.  Officers Stevens and Chobert walked through the open gate of Plaintiff's property to speak with Plaintiff.  Id. at 6.  Plaintiff was advised that he was not permitted to swim naked.  Id.  Plaintiff saw the officers approach the property and began yelling and cursing at them.  Plaintiff began to yell obscenities such as "Fuck you cops," and "Fuck South Jersey cops."  Id.

Plaintiff's yelling caused several nearby residents to come outside to investigate the commotion.  Id.  Based on Plaintiff's behavior, Officer Chobert issued Plaintiff a local ordinance summons for disorderly conduct.  Id.  Manager Lebenski also signed a criminal complaint against Plaintiff for disorderly conduct.  Id.  Officers Chobert and Stevens then left the scene. Id.

At his deposition, Plaintiff stated that he remembered that a police officer showed up on his property and entered his shed. Id. at 6-7, 8.  He remembers them coming to the property and telling him that he shouldn't be there with no clothes on.  Id.

at 6-7.  Plaintiff then agreed with the police officer.  Id. at
7.  Plaintiff recalls putting his shorts back on sometime after
the officers arrived.  Id.  Plaintiff stated that he did not
recall anything else regarding the conversation with the
officers at that time.  Id. at 7.  After the conversation,
Plaintiff recalls that the officers left Plaintiff's property.
Id. at 8.

Ms. Walsh recalls an officer telling Plaintiff that he
could not swim naked and that the police had received complaints
from the Wharf regarding Plaintiff's swimming naked.  Id.  Ms.
Walsh recalls Plaintiff telling the officer that his shorts
"slipped off" and the officer told Plaintiff "not to do it
again."  Id.  Ms. Walsh does not recall anything else about the
initial interaction between Plaintiff and the Wildwood police
officers.  Id.

According to Plaintiff, after the officers left, Plaintiff
went to take another swim and "basically the same happened" and
his shorts came off again.  Id. at 8.  Officer Stevens was again
dispatched to the 700 block of West Burk Avenue based on a
report that Plaintiff was once again swimming naked in the water
near his property despite the prior warning and summons issued
to him earlier that day.  Id.

Upon his arrival back to Plaintiff's property, Officer
Stevens observed Plaintiff exiting the bay naked.  Id.  Officer

Stevens approached Plaintiff and informed Plaintiff that he was under arrest.  Id. at 9.  Plaintiff was initially resistant, pulling away from Officer Stevens and tightening his arms in response to the officer's attempt to handcuff him.  Id.  Officer Stevens advised Plaintiff many times to stop resisting.  Id.  He then brought Plaintiff to the ground in order to affect the arrest and to overcome his resistance.  Id.

According to Plaintiff, "the next thing" he knew, he was pushed face down in the sand and handcuffed behind his back.  Id.  Plaintiff also believes that "a few words might have been exchanged" between him and Officer Stevens when Plaintiff was on the ground but he does not recall what was said.  Id.  Plaintiff does believe that he was told to put his hands behind his back.  Id.  Plaintiff was still naked when he was handcuffed but he was allowed to get dressed.  Id. at 10.  Officer Stevens was able to locate a pair of shorts and Plaintiff was allowed to put them on.  Id.

At no time did Plaintiff advise Officer Stevens that he was in any pain or that the handcuffs were too tight.  Id.  Officer Stevens recalls that the arrest took place near the water outside of the fenced in area of Plaintiff's property.  Id.  Officer Stevens then transported Plaintiff to police headquarters for processing at approximately 8:13 p.m.  Id.  Plaintiff does not recall the discussion with Officer Stevens

8

after he returned to his property but "does not believe" that he was belligerent or aggressive towards him. Id.

Ms. Walsh did not observe Plaintiff going into or coming out of the water on the second occasion but did observe Plaintiff without his shorts on. Id. When Ms. Walsh observed Plaintiff and the officers, Plaintiff was already on the ground; she had just come out of the shed. Id. at 11. She did observe Plaintiff get taken to the ground. Id. She recalls hearing the police officer tell Plaintiff to "hold still" while Plaintiff was on the ground and she told the officer to "be careful" when handcuffing Plaintiff because he had a bad back. Id. Ms. Walsh recalls that "one, maybe two" officers were present during Plaintiff's arrest. Id.

When Ms. Walsh observed Plaintiff on the ground, he was in the process of being handcuffed. Id. According to Ms. Walsh, Plaintiff was still naked at this point and the officer permitted Plaintiff to get off the ground and allowed Ms. Walsh and Mr. Meyer to help Plaintiff put his shorts on. Id. Ms. Walsh estimates that Plaintiff was on the ground for "a couple minutes" before being allowed to stand up and put on his shorts. Id. at 13.

Plaintiff was then transported to the Wildwood police station. Id. During processing one of Plaintiff's hands was handcuffed to a bar as is standard procedure when processing

arrests in order to ensure the safety of police officers.  Id.
After being processed, Plaintiff was released with a summons for
disorderly conduct and resisting arrest.  Id.  As Stevens was
escorting Plaintiff out of police headquarters, Plaintiff
aggressively lunged at Officer Stevens.  Id.  Plaintiff was not
handcuffed at this time as he was being released.  Id.

Officer Stevens then pushed Plaintiff against the booking
area wall and placed Plaintiff under arrest for disorderly
conduct.  Id.  Officer Stevens then contacted Municipal Court
Judge Garrabrant who authorized a warrant for disorderly
conduct.  Id. at 14.  Judge Garrabrant set Plaintiff's bail at
$3,500.  Id.  Once back in the processing area, Plaintiff was
extremely belligerent and was yelling and cursing.  Id.
Plaintiff had a bowel movement on himself while in the
processing area.  Id.  Plaintiff never asked to use the
restroom.  Id.  The bathroom is adjacent to the processing area.
Id.  It is standard policy to allow arrestees to use the
restroom when they ask.  Id.  Plaintiff was never sprayed with
Lysol or any other substance.  Id.  Officer Stevens then
transported Plaintiff to the Cape May County Correctional
Facility.  Id.  At no time during the transport did Plaintiff
complain of any pain or injury.  Id. at 15.  The transport
occurred without further incident.  Id.

Plaintiff alleges that while at the station, he was handcuffed to a bar while being processed. Id. Plaintiff alleges that while being processed, he asked to use the bathroom. Id. He alleges that he was not permitted to do so and so he went where he was. Id. After that, he stated at his deposition that "Officer Shawn got very angry with me at that point. And to the best of my recollection he sprayed me down with Lysol or a substance of the same type. . . . So that I was choking from the Lysol or whatever he was spraying me with." Id.

Plaintiff also alleges that when he was handcuffed at the Wildwood police station, he asked to sit down because he was tired but was not permitted to sit down. Id. Plaintiff does not believe any officer hit him while at the Wildwood police station. Id. Plaintiff does not believe that any officer kicked him while at the Wildwood police station. Id. Plaintiff states that the Wildwood police officers were "aggressive" with handling him and they "chained" him to a bar. Id. When asked about any physical injuries caused by any Wildwood police officer, Plaintiff stated that his back "was a little sore" as he stood for processing. Id.

When asked about any psychological injuries caused by any Wildwood police officer, Plaintiff stated that he was denied use of the bathroom and sprayed with Lysol. Id. at 16. Plaintiff

stated that the Wildwood officer was approximately three to four feet away from Plaintiff when the officer sprayed the Lysol. Id. When asked what the Wildwood police officers did that was inappropriate Plaintiff stated that they denied him use of the bathroom he was being processed at the station, they sprayed him with Lysol, and he had to "twist around" to be able to sit in the back of the police vehicle during transport as well as coming onto his property and into the shed, arresting him, and pushing him face down into the sand while arresting him. Id. at 16-17.

Plaintiff arrived at Cape May County Correctional Facility around 7:00 p.m. on June 30, 2018. ECF No. 37-2 at 4. Plaintiff was placed in a cell with steel bars. Id. Plaintiff repeatedly laid on the floor and kicked the bars for a half an hour or so. Id. No one came so plaintiff put a roll of toilet paper in the toilet and started flushing it. Id. Plaintiff was doing these things because he wanted a phone call. He had heard you get a phone call but is not certain whether that was true. He screamed about twenty times about wanting his phone call. Id. Officers then entered the cell, rushed the plaintiff, and pepper sprayed him. Id. Plaintiff was then placed in a restraint chair. Id. A spit bag was placed over plaintiff's head. Id. Plaintiff alleges he was in the restraint chair with a spit bag on his head for six hours. Id. at 5.

12

In addition to Plaintiff's testimony, reports from Cape May County Correctional Facility state that Plaintiff was trying to stuff his mattress down the toilet and that after spray was administered, he was secured to the Emergency Restraint Chair and then taken to the front shower where he was cleansed of spray and then evaluated by the nurse.  Id.  The Inmate Emergency/Medical Treatment form shows that the spray was cleansed from his face.  Id.  The videotape of this incident demonstrates that plaintiff was put in a restraint chair and then rolled to the shower where his eyes were cleansed.  Id.  Sheriff Gary G. Schaffer had no personal involvement in regard to this incident at the Correctional Facility.  Id.

Plaintiff's girlfriend bailed him out on July 1, 2015.  Id.  The charges against Plaintiff were dismissed because the complainant did not appear for Plaintiff's criminal trial.  Id.

Plaintiff has not disputed any of the above facts.  Indeed, Plaintiff's opposition brief provides no factual support to refute these facts and instead only references allegations in the unverified Complaint.  See ECF No. 42.

## II.  Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed

fact is material when it could affect the outcome of the suit

under the governing substantive law.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the

evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  Id. at 250.  The Court should view the

facts in the light most favorable to the non-moving party and

make all reasonable inferences in that party's favor.  Hugh v.

Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a

genuine issue concerning any material fact.  See Celotex Corp.

v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has

satisfied its burden, the non-moving party, "must present

affirmative evidence in order to defeat a properly supported

motion for summary judgment."  Anderson, 477 U.S. at 257.

"While the evidence that the non-moving party presents may be

either direct or circumstantial, and need not be as great as a

preponderance, the evidence must be more than a scintilla."

Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole

could not lead a rational trier or fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391

14

U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322.

A thorough and comprehensive review of the docket makes clear that no material fact is in dispute as to the dispositive issues in this case. To dispute an alleged undisputed fact under Federal Rule of Civil Procedure 56, the non-moving party must provide evidence to support the dispute. <u>See</u> Fed. R. Civ. P. 56(e). Here, Plaintiff has failed to provide evidence to dispute any of the undisputed facts proffered by Defendants. Specifically, Plaintiff refers only to allegations of the unverified Complaint, which are insufficient to create a dispute of fact under Federal Rule of Civil Procedure 56.[1] <u>See</u> Fed. R. Civ. P. 56(c)(1), (4). The statements of facts outlined by Defendants and appended to their Motions are thus deemed undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as

---

[1]The statement of facts submitted by Plaintiff also fails to conform to Local Rule 56.1, which requires the non-movant "to file a counter statement that denies the fact is material, admits the material fact, or denies the material fact by counter proofs conforming to the rules of evidence." <u>Owens v. Am. Hardwarde Mut. Ins. Co.</u>, 2012 U.S. Dist. LEXIS 182953, at *8 n.4 (D.N.J. Dec. 31, 2012).

required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."); Juster Acquisition Co. v. N. Hudson Sewerage Auth., 2014 U.S. Dist. LEXIS 8703, at *5 n.4 (D.N.J. Jan. 23, 2014) (noting that "any statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted."). Notably, "a Plaintiff cannot resist a properly submitted motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case." Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

III. Discussion

At the outset, the Court must note that Plaintiff has failed to meaningfully oppose the Defendants' Motions.  As already noted, Plaintiff provided no evidence and raised no genuine dispute of material fact in response to Defendants' statement of facts.  Even worse, Plaintiff, in his opposition brief, failed to provide any argument against the federal claims other than to argue that Plaintiff's property at issue should not be considered an "open field."  As to the rest of the federal claims, Plaintiff argued only that

> Here, the actions of the Defendants in harassing, assaulting, and injuring Plaintiff while Defendants were on-duty.  If Plaintiff's allegations are proven, this may lead a jury to infer the Defendants, when acting together, sought to conspire against Plaintiff.

16

> These actions establish intentional misconduct,
> excessive use of force and deliberate indifference,
> leading to bodily injury and economic loss for the
> Plaintiff.

ECF No. 42-2 at 13.

These arguments are insufficient to avoid summary judgment. After a comprehensive review of the record, the claims made in the Complaint, and the law applicable to those claims, the Court is confident that no material fact is in dispute and that judgment as a matter of law is warranted in favor of the Defendants.

A.    Section 1983 Claims

Plaintiff has brought his federal constitutional claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory,
> subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to

have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007).  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Further, supervisory liability cannot be imposed under § 1983 by respondeat superior.  See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677.  A plaintiff must show that an official's conduct caused the deprivation of a federally protected right.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970) (A plaintiff "must portray specific conduct by state officials which violates some constitutional right.").

1. <u>Wildwood Defendants</u>

    i. <u>Unlawful Search</u>

Plaintiff alleges in the Complaint that the Wildwood Defendants conducted a search of his property in violation of the Fourth Amendment when they entered his land first to warn him not to swim naked and to issue him a summons and then to arrest Plaintiff for swimming naked a second time despite being warned not to do so.

The Fourth Amendment protects "persons, houses, papers, and effects" but it does not protect "open fields." <u>United States v. Dunn</u>, 480 U.S. 294, 300 (1987). The constitutional protections afforded to one's "home" extend to the "curtilage" surrounding the home. <u>Id.</u> "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that area in question should be treated as the home itself." <u>Id.</u> "[T]he central component of this inquiry is whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." <u>Id.</u>

The law distinguishes areas deemed curtilage from "open fields." <u>Oliver v. United States</u>, 466 U.S. 170, 180 (1984). Under the "open fields" doctrine, any property beyond the curtilage is not afforded Fourth Amendment protection. <u>Id.</u> "Open fields" may consist of "unoccupied or underdeveloped

19

area[s] outside of the curtilage." Dunn, 480 U.S. at 304. "[A] trespass on open fields, as opposed to the 'curtilage' of a home, does not fall within the scope of the Fourth Amendment because private property outside the curtilage is not part of a 'house' within the meaning of the Fourth Amendment." United States v. Jones, 565 U.S. 400, 420-21 (2012).

Courts have continually held that the entering by law enforcement onto the fenced land, barn, shed, or non-dwelling is not a violation of the Fourth Amendment as it is considered "open field." See, e.g., Dunn, at 302-03 (warrantless search of a barn 60 yards from the house not a violation of the Fourth Amendment as barn was located beyond the curtilage of the house and there was no evidence that any "intimate activities" associated with the "sanctity of ft home" itself took place in the barn); Stone v. Martin, 720 F. App'x 132, 136 (3d Cir. 2017) (finding no Fourth Amendment violation when law enforcement officer walked around a locked gate on the plaintiff's property, approached a building used as a law office by the plaintiff and served plaintiff with a notice of a small claims lawsuit); United States v. Cardoza-Hinojosa, 140 F.3d 610, 616 (5th Cir. 1998) (finding no reasonable expectation of privacy of a shed on the property which was subject to a search); United States v. Correa, 635 F. Supp. 2d 379, 384 n.2 (D.N.J. 2009) ("There is no reasonable expectation of privacy in open fields.

As such, no Fourth Amendment violation results when law
enforcement officers trespass onto a private open field that is
posted and encircled by a fence); United States v. Ortiz, 438 F.
App'x 712, 715 (3d Cir. 2012) (finding that criminal defendant
who was arrested in a fenced-in area of a garage he owned which
was serval blocks away from his residence was not entitled to
the Fourth Amendment protections afforded to homes.).

Plaintiff argues that the property at issue is not an "open
field" because it is fenced in, contains a shed, has
electricity, and contains construction equipment and materials.
ECF No. 42-2 at 16.  Based on the undisputed material facts,
however, the Court holds as a matter of law that the property
located at 704-06 West Burk Avenue is properly categorized as an
open field.  It is not Plaintiff's nor anyone else's residence.

In fact, the addresses of Plaintiff's residence at 539 West
Burk Avenue and the property at issue at 704-06 West Burk Avenue
indicate that there is some distance between them with
intervening lots between both parcels.  It is a small area
between two parking lots enclosed by a chain link fence with a
shed located inside the fence.

The property is visible to the public; in fact, the
officers observed Plaintiff naked in his shed upon their arrival
to the property before entering the property.  As Plaintiff
alleges in his Complaint, the shed is used as a kayak rental

business — not as a home.  Given these undisputed facts and
relevant caselaw, Plaintiff's property at 704-06 West Burk
Avenue qualifies as an "open field."  Therefore, no Fourth
Amendment protection extends over it, and the Court must grant
judgment in favor of Defendants and against Plaintiff on this
claim.[2]

### ii.  False Arrest/Imprisonment

Plaintiff also claims that the Wildwood Defendants falsely
arrested him.  To state a claim for false arrest pursuant to §
1983, a plaintiff must allege that (1) there was an arrest, and
(2) the arrest was made without probable cause.  Dowling v. City
of Phila., 855 F.2d 136, 141 (3d Cir. 1988).  See also Sharrar
v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997) (a key element
of a § 1983 unlawful arrest claim is that the police officer
arrested the plaintiff without probable cause); Groman v. Twp.
Of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("an arrest based
on probable cause could not become the source of a [1983] claim
for false imprisonment.").  False arrest is "grounded in the

_____

[2] Even if Plaintiff's property were considered to be within the
protections of the Fourth Amendment, the Wildwood Defendants had
probable cause to enter the property and effect the arrest of
Plaintiff as discussed further infra.  The Wildwood defendants
observed Plaintiff naked on public property and watched him walk
back onto his property while still naked.  See, e.g., United
States v. Santana, 427 U.S. 38, 43 (1976) (an individual "cannot
have a reasonable expectation of privacy when their actions are
plainly visible, nor can they evade an arrest in a public place
by escaping into a private place.").

Fourth Amendment's guarantee against unreasonable seizures,"
Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995),
whereas false imprisonment is based upon the Fourth Amendment's
prohibition against deprivation of liberty without due process
of law, Baker v. McCollan, 443 U.S. 137, 145 (1979).  False
arrest and false imprisonment are nearly identical claims that
may be analyzed together and both must be predicated on an
arrest made without probable cause in violation of the Fourth
Amendment.  Wilson v. Dewees, 977 F. Supp. 2d 449, 455 (E.D. Pa.
2013).

Probable cause exists when the facts and circumstances are
"sufficient to warrant a prudent man in believing that the
defendant had committed or was committing an offense."  Gerstein
v. Pugh, 420 U.S. 103, 111 (1975).  "Probable cause to arrest
requires more than suspicion; however, it does not require that
the officer have evidence sufficient to provide guilt beyond a
reasonable doubt."  Orsatti v. N.J. State Police, 71 F.3d 480,
482-83 (3d Cir. 1995).  "If probable cause exists as to 'any
offense that could be charged under the circumstances,' then the
false arrest claim fails."  In re Schirmer, 2012 U.S. Dist.
LEXIS 182901, at *21 (D.N.J. Dec. 31, 2012) (citing Johnson v.
Knorr, 477 F.3d 75, 85 (3d Cir. 2007)).  Notably, "when an
officer has received his information from some person — normally
the putative victim or an eye witness [sic]– who seems

reasonable to believe is telling the truth, he has probable
cause." Bailey v. Gibbons, 2011 U.S. Dist. LEXIS 102873, at 36-
37 (D.N.J. Sept. 12, 2011) (citing Gramenos v. Jewel Cos., 797
F.2d 432, 439 (7th Cir. 1986). An officer is not required to
undertake an exhaustive investigation in order to validate the
probable cause that, in his mind, already exists. See Merkle v.
Upper Dublin Sch. Dist., 211 F.3d 782, 790 n.8 (E.D. Pa. 1999).

Here, Plaintiff admits he was swimming naked on both
occasions, that Plaintiff's nudity was witnessed by patrons and
the manager of the Wharf Restaurant, that the manager of the
Wharf Restaurant made a criminal complaint against Plaintiff,
and that pictures and a video of Plaintiff exiting the bay nude
were taken. The Wildwood Defendants saw with their own eyes
Plaintiff exiting the bay naked and entering his property.
Public nudity is prohibited within the City of Wildwood by
ordinance, Art II sec. 110-6, available at
https://ecode360.com/8050419.[3] The Wildwood defendants had the
authority to effect an arrest rather than issue a second summons
during their second call out to the property.[4] Based on the

_____

[3] Under New Jersey law, Plaintiff also has no constitutional
right to appear naked in public. See, e.g., State v. Vogt, 775
A.2d 551, 557 (N.J. Super. Ct. App. Dix. 2001).

[4] It is not clear from the Complaint whether Plaintiff is arguing
that he should have received a second summons instead of an
arrest. However the Wildwood Defendants have addressed such an
argument in their brief, citing ample caselaw to support the
conclusion that a custodial arrest after an initial summons was

undisputed facts, the Wildwood Defendants had ample probable

cause to effect Plaintiff's arrest, and thus the Court must

enter judgment in favor of the Wildwood Defendants and against

Plaintiff on this claim.

### iii. Excessive Force

Plaintiff also alleges excessive force when Plaintiff was

(1) taken to the ground during his arrest, (2) handcuffed to a

bar while being processed, (3) allegedly sprayed with Lysol, and

(4) forced to "twist" uncomfortably while riding handcuffed in

the police vehicle.  Given the undisputed facts surrounding each

incident, none constitutes a violation of excessive force.

Claims of excessive force at the time of an arrest are

evaluated based on the Fourth Amendment's prohibition against

unreasonable searches and seizures.  See Rivas v. City of

---

issued for disorderly conduct was appropriate under the
circumstances.  See, e.g., Grandizio v. Smith, 2015 U.S. Dist.
LEXIS 133, at *10-11 n.3 (D.N.J. Jan. 5, 2015) ("Plaintiff's
argument that summary judgment is not appropriate because he
should have only been issued a summons for his disorderly
persons offense, and not arrested, has no merit.  The Court
agrees with Defendants that Plaintiff's interpretation of State
v. Dangerfield, 171 N.J. 446, 795 A.2d 250 (2002), for this
proposition is misplaced.  Although the Dangerfield court
acknowledged that 'the modern view favors the issuance of
citations and summonses over custodial arrests for minor
offenses,' the court ultimately held that 'we do not disturb the
authority of the police to arrest for disorderly and petty
disorderly persons offenses that occurred in their presence.'");
Williams v. Vanderud, 2017 U.S. Dist. LEXIS 157432, at *24
(D.N.J. Sept. 26, 2017) (finding sufficient probable cause for
an arrest for disorderly conduct).

Passaic, 365 F.3d 181, 189 (3d Cir.2004) (noting "[t]he Supreme Court has held that all claims of excessive force by police officers, in the context of an arrest, investigatory stop, or other 'seizure,' should be analyzed under the Fourth Amendment").  Claims of excessive force at the time an individual is a pretrial detainee are evaluated based on the Due Process Clause of the Fifth or Fourteenth Amendment.  See Kingsley v. Hendrickson, ––– U.S. ––––, 135 S.Ct. 2466 (2015) (noting "[w]e have said that 'the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment' " (quoting Graham, 490 U.S. at 395 n. 10)).  The Third Circuit has noted that the exact point at which an individual transitions from arrestee to pretrial detainee has not been expressly ruled upon by the Circuit.  See Halsey v. Pfeiffer, 750 F.3d 273, 291 (3d Cir. 2014) (noting "[i]n the future . . . we might be required to decide precisely when an unlawful seizure ends and [a] due process . . . [violation] begins").

Under Third Circuit law, force used by a police officer "in the police station garage, after [the arrestee] had been transported from the scene of the initial beating" although, "the closest — both temporally and spatially — to pre-trial detention at the station house ... [was found to have] occurred during the course of [a] defendant's arrest."  United States v.

Johnstone, 107 F.3d 200 (3d Cir. 1997).  Recently, this district, relying on Johnstone, found that alleged excessive force against an individual "during his transport to the police station must be analyzed under the Fourth Amendment."  Panarello v. City of Vineland, 160 F. Supp. 3d 734, 756 (D.N.J. Feb. 8, 2016).

Because the claims relating to the Wildwood Defendants occurred either during the arrest, during transport after the arrest, or while the Plaintiff was being processed at the police station, the Court will analyze these claims under the Fourth Amendment.  No party has argued that the Fourteenth Amendment's analysis should apply given the circumstances surrounding Plaintiff's claims or that the analysis would materially differ from the analysis under the Fourth Amendment.

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable."  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999)).  The test for reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations."  Graham v. Connor, 490 U.S. 386, 397 (1989).

An officer's use of force is judged using an objective standard; thus an officer's bad intentions will not make objectively reasonable force unreasonable, and an officer's good intentions will not make objectively unreasonable force become reasonable. Id. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Significant factors in evaluating the force used by the police are whether the person being taken into custody is resisting or attempting to resist by flight." Doby v. DeCrescenzo, 171 F.3d 858, 874 (3d Cir. 1999)).

"The reasonableness of the use of force is normally an issue for the jury." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir.2004). "[A] police officer who is accused of having used excessive force is not 'precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff,' but that 'contention ... must be considered at trial.'" Id. at 199. Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004); Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005).

Construing factual disputes in favor of Plaintiff, it is clear that when Officer Stevens brought Plaintiff to the ground during the arrest he was acting reasonably. Officer Stevens was the only officer making the arrest during the second stop at Plaintiff's property. Plaintiff had previously disregarded the officers' prior directive not to swim naked and had previously been issued a disorderly conduct summons for yelling and cursing at the officers so loudly so as to alarm nearby residents and bring them out of their homes. Plaintiff admitted that he believes "some words may have been exchanged" during his arrest, and Ms. Walsh recalls hearing Officer Stevens direct Plaintiff to "hold still." Notably, Officer Stevens is only 5'9" tall and 165 pounds whereas Plaintiff is 6'3" and approximately 200 pounds.

Further, Plaintiff received no injuries from being taken to the ground and he was only on the ground for a few minutes. Viewing any dispute in favor of Plaintiff along with the fact that Plaintiff suffered no injury, it is clear that Officer Steven's action was reasonable under the circumstances. Put another way, there is simply no sufficient evidence from which a trier of fact could reasonably conclude that Officer Steven's use of force was objectively unreasonable under the circumstances. See Thomas v. City of Erie, 236 F. App'x 772, 776 (3d Cir. 2007).

Plaintiff next claims that he was subjected to excessive force when he was handcuffed to a bar while he was being processed is devoid of merit, and there is no evidence from which a trier of fact could reasonably conclude that it was objectively unreasonable under the circumstances. "Handcuffing, by itself, is not a show of excessive force." Estate of Awkward v. Willingboro Police Dep't, 2010 U.S. Dist. LEXIS 104304, at *23 (D.N.J. Sept. 30, 2010). See also Flood v. Schaefer, 367 F. App'x 315, 319 (3d Cir. 2010) ("[H]andcuffing an arrestee to a chair is not, by itself, unreasonable."); Rosenberg v. Homoki, 2009 U.S. Dist. LEXIS 31626, at *40-41 (E.D. Pa. April 9, 2009) (finding that defendant officers did not use excessive force in handcuffing the plaintiff behind his back after his arrest or handcuffing him to a bar at the police station).

Here, at no point did Plaintiff complain that the handcuffs were too tight, that he was suffering from pain or injury, or that he communicated that he was in pain. Plaintiff presents no evidence or even an allegation that he was subjected to any maltreatment other than being handcuffed to the bar. Instead, Plaintiff alleges that he wished to sit down during his processing but he could not because he was handcuffed to the bar. No reasonable trier of fact would find that this treatment was unreasonable under the circumstances.

Plaintiff next asserts that he was subjected to excessive force when he had to "twist" uncomfortably in the back of the police vehicle during his transport because he was handcuffed. As previously stated supra, handcuffs, without more, do not constitute a constitutional violation.  Here, Plaintiff did not complain that the handcuffs were too tight or that he was in pain or injured as a result of his transport in the police vehicle.  He also did not complain to the officers that he was in any pain.

Accepting the facts in favor of Plaintiff, the Court can find no evidence that a trier of fact could find that transporting Plaintiff with handcuffs, which caused him to have to "twist" while sitting in the seat constitutes excessive force.  See, e.g., Walters v. Pa. State Police, 2016 U.S. Dist. LEXIS, at *14 (M.D. Pa. Jan. 11, 2016) (finding no excessive force violation where a suspect was handcuffed and transported in the back of a police vehicle where the plaintiff made no complaints of pain or that the handcuffs were too tight); Zabresky v. Von Schmeling, 2013 U.S. Dist. LEXIS 18774, at *8 (M.D. Pa. 2013).

Finally, Plaintiff asserts that his constitutional rights were violated when an "Officer Shawn" sprayed him with Lysol. Because Officer Shawn is not a defendant in this litigation and because there are no allegations or evidence that any of the

Wildwood Defendants were personally involved in this incident, the Court will grant summary judgment in favor of the Wildwood Defendants and against Plaintiff on this claim.

### iv. Conditions of Confinement

Plaintiff also claims his constitutional rights were violated when he was denied use of the bathroom during his processing at the Wildwood Police Department. "[I]f denied of access to the toilet lasts a few hours or is not a 'complete' denial, such denial cannot supply sufficient grounds to support a constitutional claim." Banda v. Corzine, 2007 U.S. Dist. LEXIS 80932, at *32-34 n.15 (D.N.J. Nov. 1, 2007). See also Qawi v. Howard, 2000 WL 1010281, at *2 (D. Del. July 7, 2000) ("Under certain circumstances, the denial of access to toilet facilities may give rise to a[ ] [constitutional] violation. However, such violations have generally been found only when the duration of the deprivation is sufficiently long, or when the deprivation is an ongoing condition of confinement rather than the result of an isolated incident . . . These cases, however, generally involve challenges to the regular operating conditions of the prison — i.e., situations where under the everyday rules regarding access to toilets, inmates are frequently forced to urinate and defecate in their cells, often requiring them to eat and sleep in unsanitary conditions").

Here, the undisputed facts demonstrate that Plaintiff was only in the custody of the Wildwood Police Department for approximately two hours — from his arrest until his arrival at the Cape May County facility.  Specifically, Plaintiff was arrested at approximately "20:13" hours per the notation on the police report, and he was received at the Cape May County facility at "22:10" hours.

Even with accepting Plaintiff's allegations that he asked to use the bathroom and he was denied access, the Court can find no constitutional violation with the denial of toilet facilities for two hours.  Notably, after an extensive search, the Court can find no case (nor has Plaintiff cited any) in which a constitutional violation was found when an arrestee was denied access to toilet facilities for two hours.

> v.   Monell Claim Against The City of Wildwood
>      and its Police Department

Based on the above analysis, Plaintiff cannot establish that he suffered any underlying constitution violations by Officers Stevens and Chobert.  Because no constitutional violation has been established, Monell liability cannot lie against the City of Wildwood or the Police Department.  "Plaintiff must establish an underlying constitutional violation to attribute liability to the County pursuant to Monell."  Baez v. Lancaster County, 487 F. App'x 30, 32 (3d Cir. 2012).

In addition, Plaintiff presents no evidence to support Monell liability or a dispute of fact concerning the issues relevant to Monell liability.  Further, Plaintiff presents no argument opposing summary judgment on this claim.  As such, the Court will enter judgment in favor of the City and the Police Department and against Plaintiff on this claim.

### 2.   Cape May Defendants

Plaintiff has sued Defendants Cape May County and Cape May Sheriff Schaffer asserting Monell liability claims (Counts VI and X) as well as a failure to train claim against Defendant Sheriff Schaffer (Count XVII).  See ECF No. 1.

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978)).  Rather, "[a] plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom."  Id. (citing Monell, 436 U.S. at 690-91).  For municipal liability under § 1983 to attach, a plaintiff must demonstrate that "the policy or custom itself violates the Constitution" or that "the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees."  Id. (quoting

34

Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991)).

A policy is made when a decision-maker possessing final authority to establish municipal policy issues an official proclamation, policy, or edict.  See Torres v. Kuzniasz, 936 F. Supp. 1201 (D.N.J. 1996); Hernandez v. Borough of Palisades Park Police Dep't, 58 F. App'x 909 (3d Cir. 2003) (a successful plaintiff must establish that the final authoritative figure within a municipality violated that policy).  "[A] single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  Oklahoma City v. Tuttle, 471 U.S. 808 (1985).

A "custom," on the other hand, may arise when, though not authorized by law, practices by officials are so permanent and well-settled as to virtually constitute law.  Id.  Monell requires a plaintiff to prove the existence of a policy or custom which is long standing so as to have the force of law. Roman v. Appleby, 558 F. Supp. 449 (E.D. Pa. 1983).

The Court previously found that Plaintiff had failed to state a Monell claim against Defendants Cape May County Correctional Facility and the Cape May County Sheriff's

Department because Plaintiff has failed to allege that either defendant had a custom or policy in place that promoted violations of the U.S. Constitution.  See ECF No. 24. Specifically, the Court noted that Plaintiff alleged nothing more than conclusory allegations.  Id.

Now that discovery has closed, the Monell claim against the County is similarly based only on the conclusory allegations of the Complaint.  There is absolutely no evidence of any policy or custom attributable to the County that has caused Plaintiff any deprivation of any constitutional right.  Plaintiff has also failed to establish any underlying constitutional violation on which Monell liability could rest.  "Plaintiff must establish an underlying constitutional violation to attribute liability to the County pursuant to Monell."  Baez v. Lancaster County, 487 F. App'x 30, 32 (3d Cir. 2012).

In addition, Plaintiff presents no evidence to support Monell liability or a dispute of fact concerning the issues relevant to Monell liability.  Further, in his opposition brief, Plaintiff presents no argument opposing summary judgment on this claim.  For these reasons and because Plaintiff has, after discovery, produced no evidence to demonstrate a relevant policy or custom that caused any constitutional violation, the Court will grant judgment in favor of Cape May County and against Plaintiff.

As to the <u>Monell</u> claim against Defendant Sheriff Schaffer, to the extent that he is sued in his official capacity, any such claim fails. "Claims against government employees 'represent only another way of pleading an action against an entity of which an officer is an agent.' Lawsuits against officials in their official capacities are essentially suits against the government." <u>Roderique v. Kovac</u>, 1987 WL 17058 (D.N.J. Sept. 14, 1987) (granting summary judgment in favor of sheriff in his official capacity) (quoting <u>Monell</u>, 436 U.S. at 690, n.55). <u>See also</u> <u>Boyd v. Hudson County Prosecutor's Office</u>, No. 11-6744, 2014 WL 47772 (D.N.J. 2014) (granting summary judgment in favor of sheriff); <u>Andrews v. United States</u>, 2012 WL 5249977 (D.N.J. Oct. 24, 2012) ("[A]s to Defendant Atlantic County Sheriff, such Defendant is not a "person" under § 1983 and, as such, cannot be subject of a lawsuit with regard to the § 1983 claims."). Therefore, no such official capacity claim can be brought under § 1983 against Defendant Sheriff Schaffer.

To the extent that Plaintiff intended to sue him in his personal capacity, any such claim also fails. <u>See id.</u> There are no factual allegations of personal involvement or deliberate indifference against Defendant Schaffer in the Complaint, and Plaintiff cannot proceed on a theory of respondeat superior in a § 1983 claim. Plaintiff has also presented no evidence of Defendant Schaffer's personal involvement or deliberate

indifference, or raised a genuine issue of material fact regarding his involvement.

Indeed, Plaintiff admits that the sheriff had no involvement in the actions alleged to have occurred at the Cape May Correctional Facility and presents no argument against this claim in his opposition brief.  Without evidence or a genuine issue of material fact, the claims against Defendant Sheriff Schaffer in either his official or personal capacities fail, and summary judgment must be entered in his favor.

### 3. John and Jane Doe Defendants

Plaintiff alleges in the Complaint Counts II, VIII, XI, and XII, XVIII, and XIX federal claims pursuant to § 1983 against various Wildwood and Cape May John or Jane Doe Defendants. Despite the close of discovery some months ago, Plaintiff has failed to identify these John or Jane Doe defendants.  Because Plaintiff has failed to identify them and because the time for doing so has since past, the Court must dismiss them without prejudice on its own motion pursuant to Federal Rule of Civil Procedure 21.

Federal Rule of Civil Procedure 21 provides that "on motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.  See also Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (affirming dismissal of Doe defendants pursuant to Rule 21).  "Use of John

Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified.  If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Id.  See also Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed . . . if discovery yields no identities.").

Plaintiff has had adequate opportunity through discovery to allow him to identify the individual John and Jane Doe defendants and thereafter to amend the complaint.  Plaintiff has failed to do so.  As such, the Court must dismiss the John and Jane Doe defendants.  See Blakeslee, 336 F. App'x at 250-51; Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (holding that, after a reasonable period of discovery has passed, "[i]t is appropriate, before proceeding to trial, to eliminate [the] fictitious defendants from [an] action under Fed. R. Civ. P. 21.").

   B.   Remaining State Law Claim Claims

Having determined that Plaintiff has failed to raise genuine issues of material fact on his federal claims under 42 U.S.C. § 1983, the claims which remain present issues of state constitutional, statutory, and common law, over which this court

may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[5]

Specifically, Plaintiff asserts claims for assault and battery, false arrest, false imprisonment, violations of the New Jersey Civil Rights Act, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages.  See ECF No. 1.  The Court will exercise its discretion and will decline to exercise supplemental jurisdiction over these state law claims.

"The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3).  "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants."  Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009).  Additionally, the federal court should be guided by the goal of avoiding "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties."  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

---

[5] There appears to be no diversity of citizenship between Plaintiff and the Defendants so jurisdiction under § 1332 cannot lie independently, separate and apart from the federal claims.

Declining to exercise supplemental jurisdiction is particularly warranted when the case calls for an interpretation of a state constitution. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 963 F. Supp. 395, 408 (D.N.J. 1997). Further, the Third Circuit has recognized that where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so. Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). See also Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 3567.3 (3d ed.) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").

Because Plaintiff's remaining claims concern interpretations of the New Jersey Constitution and statutory and common law and the federal claims have been dismissed before trial, the prudent course is to decline to exercise supplemental jurisdiction over those claims. For these reasons, the Court will dismiss Plaintiff's state law claims against the Defendants without prejudice, for lack of jurisdiction, in accordance with 28 U.S.C. § 1367(c)(1).

IV.  Conclusion

The Court will grant Defendants' Motion for Summary Judgment and enter judgment in Defendants' favor and against Plaintiff.  The Court will also dismiss without prejudice the claims against the John and Jane Doe defendants.  An appropriate order follows.


Dated: September 3, 2019              s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.